IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 08-cv-01392-LTB-MJW

JD PARKER CONSTRUCTION, INC., a Colorado corporation; and
ELIZABETH S. LANDEN AND GERALD C. LANDEN, Trustees of the Landen Family Living Trust,

    Plaintiffs,

v.

EASTERN EQUITY PARTNERS, L.L.C., a Texas corporation; and
JEHANGER RAJA a/k/a JAY RAJA,

    Defendants.

___

## ORDER
___

This case is before me on Defendant Jay Raja's ("Raja") Motion to Dismiss for Lack of Personal Jurisdiction and Defendants Raja and Eastern Equity Partners, L.L.C.'s ("Eastern") Motion to Dismiss for Improper Venue or, in the alternative, Motion to Transfer [Doc # 7]. After consideration of the motions, all related pleadings, and the case file, I deny both motions for the following reasons.

### I. Background

This action arises out of Plaintiffs' attempt to purchase shares in L'Equipe Capital Investments, 110707-1, Inc. ("L'Equipe") from Eastern for $734,400. Plaintiffs became interested in purchasing the L'Equipe stock after Calvin Landen, son of Plaintiffs Elizabeth and Gerald Landen, and Grant Juschka sought financing from Eastern through Raja, Eastern's president and CEO, for a business venture. Although Eastern declined to provide the requested financing, Plaintiffs contend that Eastern hired Mr. Juschka as its Executive Vice

President/Collateral Provisions shortly after the negotiations for financing fell through.  In this capacity, Plaintiffs contend that Mr. Juschka worked out of his Fort Collins, Colorado home and was charged with "introduc[ing] [his] business contacts in Colorado to [Eastern] so that [Eastern] could finance their investment opportunities."  Defendants deny that Mr. Juschka was ever an employee of Eastern but are unclear on the nature of the relationship between Mr. Juschka and Eastern.  In any event, it is clear that Mr. Juschka advised Plaintiffs about an opportunity to purchase shares in L'Equipe and was compensated by Eastern after Plaintiffs wired the purchase money for the shares.  Plaintiffs' purchase money totaling $734,400 was wired to Eastern's Irving, Texas bank account on March 14, 2008 via two separate wire transfers.  After the wire transfers, Eastern and Raja solicited additional business from Plaintiffs and another Colorado resident.

In connection with their attempted purchase of L'Equipe stock, Plaintiffs each entered into an Agreement of Purchase and Sale of Shares (the "Agreement") with Eastern.  The Agreement sets forth various conditions to "completing [the] [A]greement in favor of Plaintiffs" including Eastern's attainment of L'Equipe's consent to the transfer of shares and Eastern's deliverance of all closing documents including a certificate reflecting the transfer of shares and proof of L'Equipe's consent. *See* Agreement, ¶¶ 4.1 & 5.  It is undisputed that Eastern did not obtain L'Equipe's consent to the transfer of its stock and did not provide Plaintiffs with a stock certificate reflecting the change in ownership.  Plaintiffs have also presented evidence that Eastern never even requested L'Equipe's consent to the transfer of its stock to Plaintiffs and that L'Equipe was first made aware of the proposed sale when it was served with a copy of the complaint in this case approximately 4 months after Plaintiffs executed the Agreement.

The Agreement provides that "time is of the essence" and that Plaintiffs' purchase of Eastern's L'Equipe stock shall close on March 11, 2008. *See* Agreement, ¶¶ 6.1 & 7.4. The Agreement further provides that it "constitutes an offer to purchase which can only be accepted by [Eastern] by return of at least one originally accepted copy of agreement to the [Plaintiff] on or before March 11, 2008 failing which the offer becomes null and void." *See* Agreement, ¶ 8.1. It is undisputed that Eastern did not return an originally executed copy of either Agreement to Plaintiffs by March 11, 2008 or thereafter.

The Agreement includes a forum selection clause which provides that

> [i]n the event of a dispute arising from the contemplated transaction between the parties that cannot be amicably resolved between the parties through reasonable diligent prior effort, parties hereby agree to binding arbitration in Dallas County, Texas as the venue with sole jurisdiction.

*See* Agreement, ¶ 7.9.

Defendant Raja, a Texas resident, now seeks dismissal of the claims against him for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Defendants also seek dismissal of this case in its entirety pursuant to Fed. R. Civ. P. 12(b)(3) based on the Agreement's forum selection clause. Alternatively, Defendants seek to transfer this case to the United States District Court for the Northern District of Texas.

## II. Standard of Review

**A. Rule 12(b)(2) Legal Standard**

In a lawsuit based on diversity jurisdiction, personal jurisdiction over nonresident defendants is determined by the law of the forum state which, here, is Colorado's long arm statute, C.R.S. § 13-1-124. Section 13-1-124 provides, among other things, that Colorado courts have jurisdiction over non-residents in any cause of action arising from the transaction of any

3

business in Colorado or the commission of a tortious act in Colorado. C.R.S. § 13-1-124(1)(a)&(b).

Section 13-1-124 is coextensive with constitutional limitations imposed by the due process clause of the Fourteenth Amendment. *Benton v. Cameco Corp.,* 375 F.3d 1070, 1075 (10th Cir. 2004). Thus, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant and no further analysis is necessary. *Id.* Personal jurisdiction comports with the due process clause 1) where a defendant has minimum contacts with the forum state, and 2) where those contacts are such that jurisdiction does not offend traditional notions of fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998).

The first criteria of minimum contacts may be satisfied on two ways. *Id.* First, a court may assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id. (quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). When a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, a court may nonetheless assert general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Id.* Because general jurisdiction is not related to the events giving rise to the suit, it is subject to a more stringent minimum contacts test and requires the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts." *Id.*

4

When a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing that the court has jurisdiction. *Behagen v. Amateur Basketball Ass'n of the United States of Amer.,* 744 F.2d 731, 733 (10th Cir. 1984). The allegations in the complaint must be taken as true to the extent that they are uncontroverted by the defendant's affidavits. *Id.* If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor. *Id.*

**B. Rule 12(b)(3) Legal Standard**

The standard under Fed. R. Civ. P. 12(b)(3) is generally the same as a motion to dismiss for lack of personal jurisdiction. *See e.g. Xantrex Tech. Inc. v. Advanced Energy Indus, Inc.,* 2008 WL 2185882 at *5 (D. Colo., May 23, 2008). I must therefore determine whether Plaintiffs have made a prima facie showing that venue is proper in this Court. *Behagen, supra.* In making this determination, I accept the allegations in the complaint as true and resolve all factual disputes in favor of Plaintiffs. *Id.*

### III. Analysis

**A. Defendant Raja's Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants acknowledge that under the legal standards set forth above Eastern cannot challenge this Court's exercise of specific jurisdiction over it based on Plaintiffs' allegations regarding its solicitation of their investments in Colorado through Mr. Juschka and otherwise. Raja argues, however, that this Court lacks specific jurisdiction over him because he personally did not make any overtures towards Colorado. I disagree.

In *Calder v. Jones,* 465 U.S. 783, 790 (1984), the Supreme Court recognized that the employees of a corporation subject to the court's personal jurisdiction may likewise subject to

5

the court's personal jurisdiction when they are the primary participants in the alleged wrongdoing. Relying on *Calder*, the Tenth Circuit held in *Application to Enforce Admin Subpoena Duces Tecum of the S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir. 1996) that the district court had personal jurisdiction over the former president of two Bahamian companies, whose contacts with the United States related solely to his capacity as corporate president, because he was the primary participant in the corporate actions that formed the basis for jurisdiction. Similarly here, both the allegations in Plaintiffs' complaint and the affidavits submitted in opposition to Raja's motion demonstrate that he was the primary participant in Eastern's alleged wrongdoing in defrauding Plaintiffs. Plaintiffs have therefore made a prima facie showing that Raja has sufficient contacts with Colorado to justify the exercise of specific jurisdiction over him, and I need not consider the alternative argument of whether this Court also has general jurisdiction over Raja.

I must next determine whether Plaintiffs have met their burden of demonstrating that the Court's exercise of jurisdiction over Raja does not offend traditional notions of fair play and substantial justice. In making this determination, I consider such factors as (1) Colorado's interest in adjudicating this dispute; (2) Plaintiffs' interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

The first two relevant factors weigh in favor of finding that this Court has personal jurisdiction over Raja. Although it is unclear whether the remaining factors likewise weigh in favor of a finding of personal jurisdiction, it is clear that Raja has not made a compelling case

that these other considerations would render this Court's exercise of personal jurisdiction over him unreasonable. *See Burger King Corp.,* 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). I therefore conclude that both of the due process requirements for personal jurisdiction over Raja have been satisfied, and Raja's motion to dismiss for lack of personal jurisdiction must fail.

**B. Defendants' Motion to Dismiss For Improper Venue or to Transfer Case**

Defendant's motion to dismiss for improper venue or to transfer the case is predicated on the forum selection clause in the Agreement. Such clauses are typically enforced unless the challenging party can demonstrate that enforcement would be unreasonable or unjust or that the clause is invalid. *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972). Here, Plaintiffs argue that the forum selection clause is invalid because no contract was formed between the parties. I agree.

"An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prod. Int'l, Inc. v. Emo Trans, Inc.,* 962 P.2d 983, (Colo. App. 1997). "An offer is a manifestation by one party of a willingness to enter into a bargain." *Id.* "An acceptance is a manifestation of assent to the terms of the offer, and unless otherwise specified in the offer, the offeree may accept by promising to perform or by performing." *Id.* The question of whether parties have entered a contract is a question of fact under Colorado law. *Southern Colorado MRI, LTD. V. Med-Alliance, Inc.,* 166 F.3d 1094, 1098 (10th Cir. 1999).

7

By its express terms, the Agreement constitutes "an offer to purchase." *See* Agreement, ¶ 8.1. The Agreement limits the manner of acceptance to the return of an "originally accepted copy of agreement to [Plaintiffs] on or before March 11, 2008 ..." *Id.* Since no original copy of the Agreement was returned to Plaintiffs, they argue that the requisite acceptance of their offer by Eastern is lacking. Defendants respond by arguing that Plaintiffs waived the contractual terms of paragraph 8.1. Indeed, since Plaintiffs themselves did not even sign the Agreement until March 11, 2008, it was impossible for Eastern to meet the deadline for acceptance from the outset. Although this chronology suggests a waiver of the March 11, 2008 deadline for acceptance and closing, it does not support a finding of a waiver of the Agreement's requirement that Eastern accept the purchase offer by returning an original, signed copy of the Agreement and that the stock purchase be completed within a reasonable time. Moreover, Plaintiffs have presented compelling evidence that Eastern had not even requested the required consent of L'Equipe to the proposed sale 4 months after Plaintiffs signed the Agreement and wired the purchase money to Eastern despite the fact that such consent was a condition precedent to "completing [the] [A]greement in favor or [Plaintiffs]." See Agreement, ¶ 4.1. Under these circumstances, although Plaintiffs clearly manifested an intent to be bound to the proposed stock purchase, Eastern did not. Accordingly, the Agreement is not an enforceable contract, and its forum selection clause contained therein does not mandate the dismissal or transfer of this case.

For the reasons set forth above, IT IS HEREBY ORDERED that

1. Defendant Raja's Motion to Dismiss for Lack of Personal Jurisdiction [Doc # 7] is DENIED; and

2. Defendants Raja and Eastern's Motion to Dismiss for Improper Venue or, in the alternative, Motion to Transfer [Doc # 7] is DENIED.


Dated: January  22 , 2009 in Denver, Colorado.


                                                BY THE COURT:

                                                  s/Lewis T. Babcock
                                                LEWIS T. BABCOCK, JUDGE